Eberhart vs. The State of Georgia.

SUSAN EBERHART, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

(MONTGOMERY, Judge, was providentially prevented from presiding in this case.)

1. This Court will not interfere with the discretion of the Judge below, in refusing to grant a continuance, unless that discretion be abused.

2. In a criminal cause, after a jury has been made up, it is no good ground to quash or set aside the panel, that there is upon it one incompetent juryman, or that during the making up of the jury, persons were put upon the prisoner, as proposed jurymen, whose names were not on the legal jury list.

3. Section 4588 of Irwin's Revised Code, providing the mode of proceeding, if a juror, be by newly discovered evidence found to be incompetent, after the jury is made up and before the trial, applies as well to a case where the State objects to a juror as to an objection by a prisoner.

4. The decision of the Judge, as the trior, in impaneling a jury, in a criminal case, upon the questions of fact, submitted to him as such trior, (as for instance, as to the bias of a juror) is final and cannot be the ground of a motion for new trial.

5. If, during a criminal trial, the jury separate, and the Judge. of his own motion, take notice of the fact and proceed by examination to purge

Eberhart *vs.* The State of Georgia.

the jury, and the prisoner and his counsel say nothing, and make no objection that the examination is incomplete, he cannot, after verdict, say that the purgation of the jury was not complete.

6. Whether a party who has announced his case as closed, shall afterwards be allowed to introduce a witness, and when during the course of a trial this privilege shall absolutely cease, must depend on the circumstances of each case, and on the discretion of the Judge, and it is only when decided injustice is done that this Court will control that discretion.

7. The burden of the proof showing that a confession made by a prisoner is not voluntary is upon the prisoner, and if nothing appear to the contrary, the confession is admissible as a voluntary confession.

8. Confessions of guilt may, according to their nature be direct or circumstantial evidence. If they be of facts, directly admitting the commission of the crime charged they are direct evidence, but if the fact confessed be only matter from which an inference of participation arises, they are circumstantial only.

9. Where a murder by strangulation was stated by the prisoner to have been committed by another in the prisoner's presence, and the prisoner confessed that she, at the suggestion of the active and leading murderer, stopped the deceased's cries by putting a handkerchief over her mouth, this is to be taken as direct evidence of guilt, and not as circumstantial only.

Criminal law. Continuance. Jury. Practice. Confessions. Evidence. Before Judge CLARK. Webster Superior Court. May Special Term, 1872.

At a special term of Webster Superior Court, held in May, 1872, Enoch F. Spann and Susan Eberhart were indicted for the offense of murder upon the person of Sarah Spann, alleged to have been committed on the 4th day of the then present month. The indictment contained additional counts against Susan Eberhart, charging her as a principal in the second degree, and as an accessory before the fact. After the conviction of Spann, Susan Eberhart was placed on trial and pleaded not guilty.

The evidence made, substantially, the following case:

On May 4th, 1872, the defendant, Enoch F. Spann and his wife, Sarah Spann, the deceased, were seen together at the house of Spann, in Webster county, at between nine and ten o'clock in the evening. On the next morning, the body of

Sarah Spann was found covered up in bed, except the hair, in said house, with marks of violence about her neck, suggesting the probability that she had been strangled to death. A handkerchief, with blood on it, was found wadded under the pillow of the bed. Under the back portion of the house was found a rope, with hair on it resembling the hair of the deceased. Spann and the defendant were not to be found about the house, but tracks were discovered, leading from the house in a southeastern direction, indicating that they had been made by parties when running. The larger track appeared to have been made by a number nine shoe, the smaller was made by bare feet, but looked as if number five shoes would fit them. The defendant and Spann were arrested in Coffee county, Alabama, one hundred and twenty-five miles from the place of the murder, and on the ninth day after the commission of the offense. After the arrest, both prisoners confessed fully the commission of the crime; that they were equally guilty. The defendant stated that she had fallen in love with Spann, and had promised to marry him, providing his wife was out of the way; that Spann had told her that if this was her only objection, he could soon put her out of the way; that both then commenced devising plans how they could accomplish this end; that this was about a month and a half before the murder was committed; that the first arrangement was to drown her in a barrel of water, but her heart failed, and she begged Spann out of the notion of putting the deceased to death on that occasion; that the next appointment was at the cow-pen, but her heart again failed, and she again begged Spann out of the notion; that the next appointment was on the night when the murder was actually perpetrated. That Spann made the necessary preparations by going after the rope while Mrs. Blakey and the two Miss Cockranes were at the house; that the defendant went to bed and went to sleep; that Spann aroused her, told her to get up, as he had all things prepared to kill his wife; that she got up and went near the bed of deceased with Spann; that he commenced tightening the rope on his wife's neck; she gave one shriek, when Spann told the de-

Eberhart vs. The State of Georgia.

fendant to stop her mouth with a handkerchief; that she handed the handkerchief to Spann. Spann stated, on this point, that the defendant placed the handkerchief on the mouth of the deceased, and he rammed it in with one of his hands.

The defendant further stated that she turned sick and was about to faint, when Spann told her to go back to bed; that she retired to bed and went to sleep; that Spann came to bed to her and told her his wife was dead; that they both remained on the bed from two and a-half to three hours; that they got up, kindled a light in the house and took the rope off the neck of deceased, when they discovered a severe (?) ring around her neck, underneath the rope; that the defendant put on some water and warmed it, for the purpose of washing off the mark, but the more they washed the plainer it became; that they then closed her mouth and eyes; that Spann then said he must leave, because if he stayed there he would be hung, and that the defendant could return to her father's or go with him, just as she liked; that defendant replied, that if she stayed there she would be hung, and that she preferred going with him and taking the chances; that they left very hurriedly.

The jury returned a verdict of guilty. Whereupon the defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the Court erred in refusing a continuance of said cause, upon the written showing made by the defendant to the effect, that the crime with which she was charged was alleged to have been committed on the fourth day of the present month, (May;) that the defendant was arrested on or about the thirteenth day of the same month; that she had been closely confined in the common jail of the county since her arrest, and that she could not safely come to trial on account of the excitement in the public mind against her.

2d. Because the Court erred in refusing a continuance on a second motion, made after the first was overruled, on the ground that the counsel had not had sufficient time to prepare the defense, not anticipating a special term of the Court.

(NOTE BY THE JUDGE:) "The Court interrogated counsel as to what proof they required, whether any witness was absent, and what points of law they wished to investigate? Upon counsel stating that they knew of no testimony or witness that they did not have, and on failing to state any points of law on which they were not prepared, the motion was overruled."

3d. Because the Court erred in refusing to quash the panel of jurors sworn to try the defendant, upon the ground that the name of one of the jurors was not in the jury box, and that other jurors had been put upon the defendant whose names were not in said box.

(NOTE BY THE JUDGE:) "The Court overruled the motion on the last ground, because the list of jurors was in the clerk's office in the Court room during the whole time, and accessible to counsel and prisoner, and the objection, if true, (of which the Court knew nothing) should have been taken at the time the jurors' names were called, and if counsel knew of the fact or might have known it, the objection was too late. Counsel did not state that they did not know the fact when the names were called. The Court allowed the motion on the first ground as a matter of favor, stating to counsel they could withdraw the juror, and the call of the jurors' names be continued until another was obtained. This proposition was declined, and counsel for the defendant agreed to let the juror remain without waiving the objection."

4th. Because the Court erred in the following ruling: In this, after the jury was impanneled to try the cause, and before the bill of indictment was read, and before the case was opened and any testimony introduced, the Solicitor General stated in his place that he had just learned that Jeptha Wharton, sworn and then on the panel, had stated on the evening before, that if he was on the jury he would not find the prisoner guilty, and asked that the juror be put on triors. The Court allowed the request, and acted as trior. D. R. Shepherd, W. F. Spann and James M. Wharton testified that Wharton had stated to them that, from what he had heard, he

did not think the prisoner ought to be hanged. James M. Wharton, a brother of the juror and a witness for the State, who was afterwards sworn and examined, testified that on the preceding evening he narrated to the juror all the main facts in the case as he knew them, and that the juror then said if he was on the jury he would not find the prisoner guilty of murder. The witness, Shepherd, stated that the juror was a man of decided character, and of fixed opinions. The juror was withdrawn and set aside, and the call continued, over the objection of counsel, until another juror was sworn in his place.

5th. Because the Court erred in allowing W. D. Yarbrough to be put on the prisoner under the circumstances stated in the note by the Judge.

(NOTE BY THE JUDGE:) "During the trial of Spann the Court had ordered the tales jurors, and other jurors who were not sworn to try the case of Spann, to retire from the Court, stating that if they heard the testimony in that case they would probably be disqualified in the case against Susan Eberhart. During the trial of Spann, the Court discovered Yarbrough standing in the Court room, and at once ordered him to retire. When his name was called, and he had qualified himself as a juror, counsel for the defendant put the juror on triors, the Court acting as trior, and proved that he was at one time seen standing in the Court room during the trial of Spann. The juror then stated that he was in the Court room but a few moments, and heard but a few words of the testimony, and had formed no opinion from what he had heard. The Court decided the juror competent, but he was rejected by the prisoner."

6th. Because the Court erred in allowing the following proceeding upon the trial: During the examination of witnesses, the Court took a recess for dinner, and during the recess, the Court allowed the jury to go to the hotel, in the charge of the bailiff, to get dinner, without the consent of defendant's counsel, and after dinner some of the jurors returned to their room,

and some five jurors remained at the hotel and talked with the citizens.

(NOTE BY THE JUDGE.)—"The Court makes this statement. When I came out of my room to go to the Court room, I discovered some five jurors sitting in the piazza of the hotel, in company with the bailiff and some three or four citizens, one of the counsel for prisoner among them. They were immediately ordered to the Court room. Upon the re-assembling of the Court, the Court, upon its own motion, had the jurors who were at the hotel all sworn, and they stated that they had not conversed with any one about the case, nor had any one conversed with them about it; that they were talking about their farms. The Court being satisfied with this statement, and no objection being made by the counsel for prisoner, the jurors were retained and the case proceeded."

7th. Because the Court erred in allowing the Solicitor General to introduce a witness, after the evidence had closed and the argument before the jury had commenced, to prove the venue in Webster county.

(NOTE BY THE COURT.)—"The Court makes this explanation. Counsel for the prisoner was demanding before the jury a verdict of acquittal, on the ground, that the venue was not proven. The Solicitor General stated that the fact had been proven. The Court, without deciding the point, allowed the fact to be proven then, over the protest of counsel for the defendant. It appeared, afterwards, upon an examination of the testimony of Dr. Carter, that the venue had been proven."

8th. Because the Court erred in allowing the confessions of the defendant and of E. F. Spann to go to the jury without a preliminary examination, and without proof that they were freely and voluntarily made.

(NOTE BY THE JUDGE.)—"The Court explains by saying, that during the examination of the same witnesses, on the trial of Spann, on the preceding day, in the main, on the same confessions, the Court had thoroughly examined the witnesses as to the character of these confessions, and had fully satisfied itself that they were freely and voluntarily made,

Eberhart *vs.* The State of Georgia.

without the slightest hope of benefit or the remotest fear of injury. During the trial of the prisoner, no objection was made by the counsel on this ground. The attention of the Court was not called to the fact, and the matter was overlooked by the Court. The Court is fully satisfied that the confessions were voluntarily made, and he believes that the counsel for the prisoner should have made objection at the time. When the objection was made in the argument to the jury, the Court stated to counsel that he ought to have called the attention of the Court to the fact before the confessions were allowed, and then made his objection. Counsel replied, that he did not think it his duty to make out the case for the State."

9th. Because the Court erred in not instructing the jury that a recommendation to mercy would change the penalty of the crime, under the following state of facts. When the jury came in with the verdict, and before it was delivered, they asked the Court if a recommendation to mercy by them would change the penalty, and the Court told them that it would not. When they delivered the verdict, counsel for the defendant asked, at that time, that the jury be allowed to recommend to mercy. The Court declined to so instruct them.

10th. Because the Court erred in not having the names of the jurors trying said case called when they came in with their verdict.

(NOTE BY THE JUDGE.)—"No such request was made of the Court, and the Court knew that all the jurors were present."

The motion for a new trial was overruled and the defendant excepted, upon each of the grounds aforesaid.

W. A. HAWKINS; THOMAS H. PICKETT, for plaintiff in error.

C. F. CRISP, Solicitor General; C. T. GOODE, for the State.

McCay, Judge.

1. We have often declared that in cases of discretion the action of the Circuit Judge will only be disturbed by this Court when the discretion is abused. The statute, Code, section 3480, expressly gives the Judge a discretion on questions of continuance. Surely it cannot be said, under the state of facts presented by this record, it was an abuse of a wise discretion to refuse to continue the case. To say that there was ground for continuance does not meet the case. The question is, has the Judge shown gross mistake or a want of proper consideration for the rights of the prisoner? Is it apparent that he has done injustice? We think not. Was the action of the Judge on this question so manifestly wrong as to indicate that his Honor was displaying undue haste, so as that the prisoner has been wronged? We doubt if there are many criminal cases that may not be indefinitely postponed on the same showing.

2. A motion to set aside a panel is, in substance, a challenge to the array, and must be on some ground that taints *the whole*. The facts claimed to be true here have only reference to *some* of the jurors, and we are unable to understand how it can be contended they affect the array. If the men on the panel who come within the category stated are taken off the list, there would be no objection to it. The facts no more make a ground of challenge to the panel than would the fact that there was on it a juryman disqualified from interest, bias or kinship.

3. There is nothing in section 4588 of the Revised Code confining its provisions to one side. The language is general. There is no reason why it should apply to an objection by the prisoner, and not to a case where the objection is by the State. The words of the law and the reason of the law cover both the State and the prisoner.

4. The Judge is made the trior by the statute—not this Court, and if his judgment is to be reversed here, for such reasons as this bill of exceptions presents, it results that this

Eberhart *vs.* The State of Georgia.

Court is the trior, and not the Judge. This Court can only interfere on questions of law, and a finding, whether of Judge or jury, is not *illegal* unless there be mistake, or manifest bias, or prejudice, or be based on a misconception of law. Suppose the old law of force and the verdict of competency be by triors chosen as at common law, is there any appeal from their verdict? We see no reason why, as the Judge takes their place, his decision or finding should not stand on the same ground, to-wit: be final.

5. The most that can be said of this failure to examine all the jurymen, is that there was a *separation* of the jury. But the defendants knew this; did not object at the time, nor did they find any fault with the purgation of the Judge until after the verdict. It is too late to make such an objection *after verdict*, unless it appear that the knowledge came to the defendant after verdict. Parties ought not to be allowed to take all the chances of a favorable verdict, and finding themselves mistaken in their hopes, then bring forward objections to the jury known to them at the trial.

6. Perhaps there are cases where Courts of error have granted new trials on just such grounds as this. But it seems to us that in the breaking down of the old unbending forms of the common law, by our Code, the *necessity* for a *specific* order of proceedings goes with it; that one shall be held to his announcement is in the main right. But to make such a rule so rigid as to separate it from the other rules *as to order*, and say that whilst the Judge may modify *them* as justice and the public convenience may require, he must be held to *this* with an iron grip, seems to us absurd. If injustice has come from a deviation from the rule, we would interfere, but there is no pretence here of that. That this privilege has, in this case, been granted to the State, and is *therefore* unjust to the prisoner, goes upon the idea that different rules apply. But we see no reason for this. The *order of business* ought, as a general rule to be pursued by both parties, and the Court ought to have the power when a proper case presents itself to modify the rule where no injustice will occur, and the public in-

terests be subserved. It is not a positive right, and unless the modification has interfered in some way with a fair hearing, we are not disposed to scan the order of the Judge with close scrutiny in such matters.

7. Without doubt, confessions must be voluntary—that is, if they are made under the hope of reward or fear of hurt, they are not competent: Revised Code, 3740. It appears from the record that these confessions were offered and no objection made by the prisoner's counsel to their going in. We incline to think that, *if objected to,* it would have been the duty of the State to show the circumstances under which they were made, that the Court might see if they were voluntary. But confessions are not illegal evidence, standing alone. They are received in criminal cases on the same principles as in civil: Roscoe's Criminal Evidence, 37; 1 Phillip's Evidence, 397. It is the right of the prisoner to object to their coming in, unless the circumstances under which they were made also come in; but if he or his counsel fail to object, and the confessions go to the jury without any *special* inquiry as to the circumstances, he is not entitled to a new trial. The witnesses, in fact, detail, apparently, *all* that took place, especially at the fence. Perhaps, however, had the evidence been objected to, other facts might have appeared. It was the right of the prisoner to insist that an inquiry should be made, but as he failed to do this—as his counsel permitted the evidence to go in without objection, we must take it for granted that they preferred not to insist; that they knew, as the Judge certifies he knew, from an examination he had made on the trial of Spann, that they were voluntary. Confessions are legal evidence. To say that they are illegal, unless *proven* to be voluntary, would, in most cases, be to lose them altogether. Unless the circumstances under which they are made show they were not voluntary, they are admissible. If they are given in and not objected to, it is too late after verdict to say that there was not a sufficient inquiry into the circumstances. And this is true, even though it was the duty of the State, in order to justify their admission over an objection by the pris-

Eberhart *vs.* The State of Georgia.

oner, to go further and show that all the circumstances under which they were made had, in fact, been proven.

8. Confessional evidence *may be* circumstantial. As for instance, if it be of a fact, which is itself but a circumstance, from which guilt is inferable. But, confessions *may be* of the fact of the crime itself—of its actual commission, or of actual aid, by the prisoner, in the commission. It is, then, direct evidence. The confession is only the *mode of proof*: See Best on Evidence, 396; Wills on Circumstantial Evidence, 88. One may, it is true, say that proof of a fact, or a crime, by proof, not that the witness saw it, but by proof that the accused has admitted it, is only proof of such a fact, to-wit: the confession, as justifies the *inference* of guilt. The evidence comes to the Court, not from the mouth of a witness who saw the fact, but from one who testifies that he has heard the prisoner say so and so. But if the saying of the prisoner be concerning the act itself, and not simply of a fact from which the act is inferred, the testimony is at last of the act, and not of circumstances. True, there is a chance that, as the Court gets the fact, through first the prisoner, and then the witness, there is one remove further from the fact than if the witness testifies to incidents of the transaction itself. The protection against mistake or error, however, is in the improbability of one free from fear or hope confessing guilt. A confession in open Court is evidence, even of treason, and it is a sound rule of law and of common sense that a free confession is very strong evidence of guilt. The confession in this case is of the act itself. The prisoner, as one of the witnesses stated, admitted that she had held the hankerchief over the mouth of Mrs. Spann during a part of this horrible tragedy. It was a fearful and horrible deed. And she who stood by, aiding, even with her woman's hand, the foul brute who thus strangled her · he had sworn to love and protect, is just as guilty as he. The stopping of the poor victim's cries, with the handkerchief, is just as much a part of the act as the tightening of the rope.

9. It gives us great pain to be compelled by our sense of duty to the law and to the public, to affirm this judgment. We

have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at length about to suffer for crime. It may be a sign of a tender heart, but it is also a sign of one not under proper regulation. Society demands that crime shall be punished and criminals warned, and the false humanity that starts and shudders when the axe of justice is ready to strike, is a dangerous element for the peace of society. We have had too much of this mercy. It is not true mercy. It only looks to the criminal, but we must insist upon mercy to society, upon justice to the poor woman whose blood cries out against her murderers. That criminals go unpunished is a disgrace to our civilization, and we have reaped the fruits of it in the frequency with which bloody deeds occur. A stern, unbending, unflinching administration of the penal laws, without regard to position or sex, as it is the highest mark of civilization, is also the surest mode to prevent the commission of offenses.

Judgment affirmed.