## 32167. HAWES v. THE STATE.

MARSHALL, Justice.

The appellant was convicted of murder, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. He received a death sentence for the murder conviction, a life imprisonment sentence for the armed robbery conviction, and a ten-year sentence for the aggravated assault conviction. The trial judge set aside the conviction of possession of a firearm during commission of a felony as a lesser included offense.

This case is here on direct appeal and for mandatory review of the death sentence imposed.

### I. Summary of the Evidence.

The state presented evidence from which the jury was authorized to find the following:

The appellant and one of the accomplices to this crime, Eddie Maurice Hawes, were observed in the Big J. Supermarket in Homerville, Georgia, at approximately noon on April 20, 1976. They were standing at the checkout counter. The appellant, the shorter of the two, was holding a pair of gloves. His accomplice had a six-pack of malt liquor.

Two customers in the store left, but before reaching their car they heard two gunshots. The appellant and his companion were then seen running from the store. The appellant was putting a pistol in his pocket, and his taller companion was clutching a money bag with both hands. They fled in a maroon and white car driven by a third accomplice.

The first gunshot was fired into the chest of Stephen

Michael Johnson, the clerk working behind the checkout counter. He was killed. The second shot was fired at Roy Metts, the assistant manager of the supermarket. He was not, however, injured.

The perpetrators were quickly traced to the home of Jo Ann Addison, the appellant's cousin. Police officers went to her home to investigate. They heard movements within the home but received no response to their knocking on the door and requests to enter. They forcibly entered the Addison home and found the appellant and the two accomplices inside.

The three of them were taken outside and placed in police cars. One police officer then reentered the Addison home to search for a fourth possible suspect and to secure the house from people milling about the premises. Inside the house lying on the floor he found the money bag taken from the Big J. Supermarket, together with a large sum of money. Also found on the floor was a .38 Smith and Wesson revolver shown to have fired the bullet killing the deceased.

## II. Enumerations of Error.

1. The first enumeration of error alleges that, "the convictions and sentence of death must be vacated because the appellant was afforded inadequate representation by court-appointed counsel in violation of Georgia Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

The record shows only the following with respect to the qualifications of the appellant's legal counsel at trial: The appellant's court-appointed counsel of record had approximately five years of experience in the general practice of law; assisting him were two other attorneys, one with 25 years' experience and the other with 30 years' experience in the practice of law. All of them are members in good standing of the Bar.

The defendant's appellate counsel asserts various omissions on the part of the defendant's trial counsel in his conduct of the proceedings below, and he argues that their cumulative impact amounted to ineffective assistance of counsel.

Among these are a failure to file a motion to suppress evidence, failure to cross examine key state's witnesses as

to their credibility and reliability, objections limited mostly to introduction of photographic evidence not essential to the state's case, failure to request a charge on circumstantial evidence, and inadequate closing argument. The appellant also complains of his trial counsel's failure to interview witnesses testifying on behalf of a motion for change of venue and failure to raise the issue of the composition of the grand and traverse juries.

However, the record shows that the appellant's trial counsel did take the following actions in his defense: demand for a copy of indictment and list of witnesses, motion for the defendant to be administered a psychological examination, motion to compel disclosure in the nature of a Brady motion, motion for individual voir dire and sequestration of jurors during voir dire, motion to sever, motion for change of venue (three witnesses being called to testify in support of the motion), and repeated objections to the introduction of evidence and various testimony of witnesses at trial.

In the landmark decision of MacKenna v. Ellis, 280 F2d 592 (1960), the 5th Circuit Court of Appeals abandoned the traditional sham, farce, or mockery-of-justice standard for determining the effectiveness of counsel, and recognized the constitutional right to assistance of counsel as meaning "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." Id. at 599. In *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515) (1974), this court adopted the standard for determining the effectiveness of counsel enunciated in MacKenna, supra.

What does the right to reasonably effective assistance of counsel guarantee the defendant in a criminal trial? "When inadequate representation is alleged, the critical factual inquiry ordinarily relates to . . . whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy."

Brubaker v. Dickson, 310 F2d 30, 32. (5th Cir. 1962). "Effective assistance does not mean that a defendant is entitled to have the best counsel appointed, or any particular counsel, but it does mean that he must have such assistance as will assure him due process of law." Pineda v. Bailey, 340 F2d 162, 164 (5th Cir. 1965).

"The decisions on which witnesses to call, whether and how to conduct cross examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." *Reid v. State,* 235 Ga. 378, 379 (219 SE2d 740, 742) (1975), quoting ABA Standards, relating to the Adm. of Crim. Justice (1974), the Defense Function, § 5.2 (b).

Applying these legal standards to the facts and circumstances of the present case as found in the record before us, we cannot say that the defendant was denied his constitutional right to assistance of counsel. See *Adams v. State,* 236 Ga. 468 (224 SE2d 32) (1976); *Dobbs v. State,* 235 Ga. 800 (221 SE2d 576) (1976).

Enumeration of error 1 is without merit.

2. Enumeration of error 2 is controlled by Division 1, supra, and is also without merit.

3. The third enumeration of error alleges that the trial court erred in not charging, in the absence of a request to charge, on the law of circumstantial evidence.

As provided in Code § 38-109, "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

However, even in a case which is wholly dependent on circumstantial evidence, if from the proved facts only one reasonable hypothesis presents itself, i.e., that the defendant is guilty of the offense charged, then a failure to charge under the prior Code section does not furnish cause for a new trial. See *Germany v. State,* 235 Ga. 836 (221 SE2d 817) (1976). Stated somewhat differently, a failure to charge on circumstantial evidence is considered harmless error if the case is not close or doubtful.

The evidence of the defendant's guilt in this case is circumstantial. However, the proved fact that the

defendant and his accomplice were seen at the checkout counter of the supermarket immediately before the robbery-murder occurred, together with the proved fact that the defendant was seen running out of the store stuffing a gun into his trousers immediately after the robbery-murder occurred, leads almost irresistibly to the inference that the defendant was involved in the commission of these crimes.

The case was not, therefore, close or doubtful. The charge on the state's duty to establish the defendant's guilt beyond a reasonable doubt was full and fair. From the evidence introduced at trial, there appeared no reasonable hypothesis save that the defendant was guilty of the offenses charged. See Justice Hill's special concurrence in *Nance v. State,* 239 Ga. 381 (236 SE2d 752) (1977). Hence, the failure of the trial court to charge on circumstantial evidence did not constitute reversible error under the facts of this case.

4. Enumeration of error 4 contends that the trial court erred in disqualifying a prospective juror upon the following statements made by her concerning her opposition to the death penalty: "District Attorney: Are either of you conscientiously opposed to capital punishment? If so, please stand. Juror stands. District Attorney: Your name is Mrs. Wilson (Marrie Ruth Wilson). Mrs. Wilson: That's right. District Attorney: Mrs. Wilson, I'd like to ask you one additional question and that is, would you because of your conscientious objection to capital punishment, refuse to vote for the death penalty in this case, under any circumstances, regardless of the facts that might be proved by the evidence in the trial of this case? Mrs. Wilson: I just don't believe in capital punishment, sir. District Attorney: Your answer is that you would not then. Is that right? Mrs. Wilson: Right."

We believe that this entire questioning process, when viewed in its entirety, shows that the prospective juror gave an affirmative answer to the question posed to her by the district attorney. That question was, whether, because of her conscientious objection to capital punishment, she would refuse to vote for the death penalty in this case under any circumstances regardless

of the facts proved. The question was in accordance with the standards enunciated in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), and its progeny. Consequently, it was not error for the trial court to excuse the prospective juror for cause.

We note, additionally, that this prospective juror was being examined as an alternate juror and that it did not become necessary to call for service on the jury the alternate juror who was eventually selected.

5. Appellant's fifth enumeration of error contends that the exclusion of jurors opposed to capital punishment from the guilt-innocence phase of the trial deprived the appellant of a trial by a jury reflecting a fairly representative cross-section of the community.

As recently recognized by this court in *Douthit v. State,* 239 Ga. 81, 87 (235 SE2d 493) (1977), this "prosecution prone" argument was rejected by the United States Supreme Court in Bumper v. North Carolina, 391 U. S. 543 (88 SC 1788, 20 LE2d 797) (1968), for lack of evidence to support the theory that such death-scrupled jurors constitute a distinct and recognizable class. The argument was rejected in *Douthit* because no additional evidence in support of that theory was presented. The argument is rejected here for the same reason. See also *Porter v. State,* 237 Ga. 580 (1) (229 SE2d 384) (1976).

6. Enumeration of error 6 alleges that the trial court erred in permitting a witness for the state, who was in the supermarket when the robbery-murder occurred, to testify that her brother, who was also present, made the statement to her that, "[t]hat damn nigger done shot that white boy." It appears from the record that this statement was made by the witness' brother immediately after the shooting occurred.

"The declarations complained of were made so shortly after the commission of the act and were so nearly connected therewith in time as to be free from all suspicion of device or of afterthought and as to constitute a part of the res gestae, and were admissible as such. Code § 38-305." *Hooks v. State,* 215 Ga. 869, 872 (114 SE2d 6) (1960). See *Durham v. State,* 129 Ga. App. 5 (4) (198 SE2d 387) (1973) and *Jones v. State,* 120 Ga. App. 295 (2) (170 SE2d 305) (1969), both of which admit as part of the res

gestae statements of bystanders to a homicide, using the same reasoning as articulated in *Hooks*. This enumeration of error is, consequently, without merit.

7. The seventh enumeration of error contends that the trial court erred in permitting the introduction of the physical evidence which was seized from Jo Ann Addison's home, when the appellant and his accomplices were arrested. The appellant argues that this search, which was conducted without a warrant, was illegal under the Fourth Amendment.

The appellant did not file a motion to suppress this evidence at trial, as provided by Code Ann. § 27-313 (Ga. L. 1966, pp. 567, 571). Although the prior Code section does not expressly provide the time when a motion to suppress must be made, it is apparent from a reading of the statute that the motion must be made at trial. As the Court of Appeals has held on numerous occasions, a failure to interpose a timely motion to suppress pursuant to the Act (Georgia Search and Seizure Act of 1966) constitutes a waiver of the constitutional guarantee with respect to the search and seizure in question. See, e.g., *Wilson v. State,* 126 Ga. App. 145 (1) (190 SE2d 128) (1972); *Bissel v. State,* 126 Ga. App. 61 (2) (189 SE2d 701) (1972); *Lane v. State,* 118 Ga. App. 688 (2) (165 SE2d 474) (1968); *Brannen v. State,* 117 Ga. App. 69 (159 SE2d 476) (1967).

In any event, it would appear that the warrantless search was valid under the "exigent-circumstance" exception to the warrant requirement, as stated in McDonald v. United States, 335 U. S. 451 (69 SC 191, 93 LE 153) (1948) and further amplified in Warden v. Hayden, 387 U. S. 294 (87 SC 1642, 18 LE2d 782) (1967).

8. The appellant's eighth enumeration of error concerns the following statement of the trial judge in his charge to the jury in regard to the aggravated assault charge: "Now, we have another one, which is aggravated assault. Now I charge you . . . of course, this aggravated assault was on Roy Earl Metts, *which is not the one that was killed."* The appellant argues that this statement amounted to an expression or intimation of opinion in contravention of Code § 81-1104.

The charge as a whole is to be considered when

determining the correctness of an excerpt. *Radney v. Levine,* 75 Ga. App. 137 (42 SE2d 644) (1947); *Metropolitan Life Ins. Co. v. Crowder,* 71 Ga. App. 612 (31 SE2d 618) (1944). Looking to the charge as a whole, the jury was fairly instructed that in order to find the defendant guilty of the murder of Stephen Michael Johnson, they must find beyond a reasonable doubt that the defendant did, with malice aforethought, either express or implied, cause his death. Since the defendant in this case, as in most murder cases, did not choose to defend the murder charge on the ground that the person named as the decedent in the indictment had been "killed," as opposed to "murdered," we do not believe that the excerpt from the charge furnishes any cause for a new trial. See *Ray v. State,* 235 Ga. 467 (5) (219 SE2d 761) (1975); *Jones v. State,* 130 Ga. 274 (14) (60 SE 840) (1908); *Smith v. State,* 12 Ga. App. 13 (3) (76 SE 647) (1912).

9. The appellant argues in enumeration of error 9 that the trial court erred in not charging the jury, in the absence of a request, on the law and existence of mitigating circumstances during the sentencing phase of the trial. We hold that the death penalty must be set aside for this reason, and for the additional reason that the trial judge's charge to the jury on aggravating circumstances was misleading.

The trial judge did not instruct the jury that they should consider mitigating circumstances in arriving at their decision on the appropriate penalty to be imposed.

This failure to inform the jury that they were authorized to consider mitigating circumstances when there were mitigating circumstances authorized by law and warranted by the evidence was in contravention of requirements laid down in Code Ann. §§ 27-2534.1 (b) and 27-2534.1 (c).

There are cogent reasons underlying this statutory requirement, for the United States Supreme Court has held in Jurek v. Texas, 428 U. S. 262, 271 (96 SC 2950, 49 LE2d 929) (1976) that, "in order to meet the requirement of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances."

We have determined that the death penalty must be

set aside for the additional reason that the trial judge failed to make clear in the charge to the jury that they could recommend a life sentence even if they found the existence of a statutory aggravating circumstance. *Fleming v. State,* 240 Ga. 142 (7) (1977).

10. In enumeration of error 12 the appellant complains of the following remarks made by the district attorney in his closing argument to the jury during the sentencing phase of the trial: "In the event that you return the verdict that I submit to you, the evidence demands, automatically the Supreme Court of the State of Georgia review the entire proceeding and compares it with other cases," and "the State executes only guilty persons after they've been tried and convicted and appealed and everything exhausted."

We agree with the appellant that under *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975), these remarks by the district attorney to the jury, even though un-objected to, require that the death penalty be set aside.

11. Enumeration of error 13 complains of the district attorney's reading an excerpt from *Eberhart v. State,* 47 Ga. 598, 609 (1873) to the jury during the penalty stage of the trial. The remarks by the district attorney are as follows: "I want to close here and just very briefly give you a quotation that was written by one of the Supreme Court Judges of the State of Georgia, in *Eberhart v. State,* 47 Ga., page 610. He wrote in a case in which the death penalty was involved, in a murder case, the Judge wrote: 'We have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at length about to suffer for crime. It may be a sign of a tender heart, but it is also a sign of one not under proper regulation. Society demands that crime shall be punished and criminals warned, and the false humanity that starts and shudders when the axe of justice is ready to strike, is a dangerous element for the peace of society. We have had too much of this mercy. It is not true mercy. It only looks to the criminal, but we must insist upon mercy to society, upon justice to the poor woman whose blood cries out against her murderers. That criminals go unpunished is a disgrace to our civilization, and we have reaped the fruits of it in the frequency with which bloody

deeds occur. A stern, unbending, unflinching administration of the penal laws, without regard to position or sex, as it is the highest mark of civilization, is also the surest mode to prevent the commission of offenses.' So, I submit to you that those thoughts are as applicable today as they were 100 years ago when they were written."

The appellant contends that those remarks by the district attorney to the jury were in violation of Code Ann. § 24-3319, which provides in part that, "Counsel shall not be permitted, in the argument of criminal cases, to read to the jury recitals of fact or the reasoning of the court as applied thereto, in decisions by the Supreme Court or Court of Appeals."

The state, on the other hand, argues that the district attorney was merely offering a plausible reason for seeking the death sentence, as permitted in *Chenault v. State,* 234 Ga. 216 (7) (215 SE2d 223) (1975).

We will rule on the propriety of these remarks by the district attorney, even though unobjected to at trial, because under the mandate of the death penalty procedure (Code Ann. § 27-2537 (c) (1); Ga. L. 1973, pp. 159, 165) this court must determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." *Prevatte,* supra, p. 931.

The previously cited passage from *Eberhart,* supra, did not concern the facts of that case or the reasoning as applied to those facts, but was mere obiter dicta. Therefore, no violation of Code Ann. § 24-3319 is apparent.

We do believe, however, that the remarks by the district attorney were improper. It would not have been improper for the district attorney merely to have expressed to the jury the sentiments embodied in the quote from *Eberhart,* supra. Cf. *Chenault,* supra. However, the district attorney's attribution of those sentiments to a justice of this court with the object of influencing the jury to impose the death penalty was improper and is disapproved. See *Croom v. State,* 90 Ga. 430 (4) (17 SE 1003) (1892). We do not reach the question of whether this alone would require a new trial on the

issue of punishment, as the death sentence is being set aside for other reasons.

12. Appellant's enumerations of error 14 and 15, contending that his conviction for armed robbery must be set aside as a lesser included offense of felony murder, are without merit for the reason that he was convicted of malice murder.

Furthermore, the conviction of the appellant's accomplice for malice murder has been held not to be a lesser included offense of armed robbery under the facts of this case. See *Hawes v. State,* 239 Ga. 630 (1977).

The convictions of the appellant for armed robbery, aggravated assault, and murder are affirmed, as are the sentences for armed robbery and aggravated assault. The sentence of death for murder is set aside, and a new trial is ordered on the issue of punishment for that offense.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Jordan, Hall and Hill, JJ., who concur specially.*

ARGUED APRIL 13, 1977 — DECIDED NOVEMBER 28, 1977 — REHEARING DENIED DECEMBER 15, 1977.

*Tom W. Thomas, Millard C. Farmer, Jr.,* for appellant.

*Vickers Neugent, District Attorney, Arthur K. Bolton, Attorney General, B. Dean Grindle, Jr., Assistant Attorney General,* for appellee.

JORDAN, Justice, concurring specially.

I concur in the judgment but not in all that is said in Division 9 of the opinion. Especially do I have reservations on the holding in *Fleming v. State,* 240 Ga. 142 (7) (1977).

HALL, Justice, concurring specially to the judgment reversing the sentence of death.

In 1963 the legislature decided that offenders under the age of seventeen should not be executed for their offense. Ga. L. 1963, p. 122. The Act which established this law was passed for this purpose and no other, and in so doing the legislature established the policy of this state

beyond question.

This bill was in two sections. Section 1 amended Code § 26-1005, which dealt only with murder.[1] Section 2 amended Code § 27-2302, which at that time dealt with all other capital offenses.[2] The reason for two sections was the existence of two Code sections dealing with capital offenses; no distinction between types of capital offenses was created by this Act, and none was intended.

---

[1] Code § 26-1005 read as follows before the 1963 amendment: "26-1005. The punishment for persons convicted of murder shall be death, but may be confinement in the penitentiary for life in the following cases: If the jury trying the case shall so recommend, or if the conviction is founded solely on circumstantial testimony the presiding judge may sentence to confinement in the penitentiary for life. In the former case it is not discretionary with the judge; in the latter it is.

"Whenever a jury, in a capital case of homicide, shall find a verdict of guilty, with a recommendation of mercy, instead of a recommendation of imprisonment for life, in cases where by law the jury may make such recommendation, such verdict shall be held to mean imprisonment for life. If, in any capital case of homicide, the jury shall make any recommendation, where not authorized by law to make a recommendation of imprisonment for life, the verdict shall be construed as if made without any recommendation."

This was changed by adding the following at the end of the first paragraph:

"When it is shown that a person convicted of murder had not reached his seventeenth birthday at the time of the commission of the offense, the punishment of such person shall not be death but shall be imprisonment for life." Ga. L. 1963, p. 122.

[2] Code § 27-2302 read as follows before the 1963 amendment: "27-2302. In all capital cases, other than those of homicide, when the verdict is guilty, with a recommendation of mercy, it shall be legal and shall mean

Section 1 of this Act, and the rest of Code § 26-1005 were repealed in 1968 as part of the comprehensive revision of the Criminal Code. There is no indication that this action was intended to change the policy of the state with regard to executions of children. Indeed, I am convinced that this was not intended.

The Harrison Company in 1968 erroneously concluded that Section 2 of the 1963 Act was also repealed, and returned Code Ann. § 27-2302 to its original form. This error went undetected until after the judge sentencing act was passed in 1974, again amending Code § 27-2302. Ga. L. 1974, p. 352. At this point the error was compounded, for the Code Annotated language was used in the redrafting of that section. Since the limitation on the execution of children was not in the Code Annotated, it was left out of the revision when this section was restated. This was not intended to change the law in this regard. See Report of the Governor's Commission on Judicial Processes, pp. 7-9 (1971).

Now the state argues that there is no law restricting executions of children over 12 years old.[3] Section 1, it is argued, was the only section dealing with murder, and it was expressly repealed. Section 2, it is argued, did not cover the crime of murder because it amended a section which had not applied to murder before. Moreover, the state says this section was impliedly repealed by the 1974 revision. See *Osborne v. Ridge View Associates,* 238 Ga. 377 (233 SE2d 342) (1977).

---

imprisonment for life."

The amendment added the following: "When the verdict is guilty without a recommendation to mercy it shall be legal and shall mean that the convicted person shall be sentenced to death. However, when it is shown that a person convicted of a *capital offense* without a recommendation to mercy had not reached his seventeenth birthday at the time of the commission of the offense the punishment of such person shall not be death but shall be imprisonment for life." (Emphasis added). Ga. L. 1963, pp. 122, 123.

[3] Thirteen is the age of criminal responsibility. Code § 26-701.

I recognize that the state's technical, legal argument can be defended as a matter of legal logic. But this argument is devoid of policy, and contravenes the intention of the legislature.

I prefer an interpretation of these events which would effectuate the policy choice made in 1963, which I believe is still the law in Georgia. The language of Section 2 of the 1963 Act is not limited to capital offenses other than homicide, and the Act as a whole was not intended to create different rules for different offenses. I would interpret this language as applying to all capital offenses, and thus Code § 27-2302 as amended would apply to bar an execution in this case.

As for the implied repeal in 1974, I recognize the validity of the *Osborne* rule, but as I construe that rule, it should not be applied to defeat the legislative intent. Rules of statutory construction cannot be mechanically applied, rather they should be used to further the intent of the legislature. See Frankfurter, Some Reflections on the Reading of Statutes, 47 Col. L. Rev. 527 (1947). I do not find an implied repeal of this law.

The state's argument leads to the absurd result that a child of 12 will not be guilty of any criminal offense when he commits a murder, yet if that same child waits until he is 13 he can be executed for the offense. This contrast in penalties is too great for me to believe that the legislature intended this result. In 1963 a contrary policy was unmistakably made the law, and given two legal arguments as to the effect of the events subsequent to that date, I chose the one which prohibits the state from killing children over the one which allows it.

HILL, Justice, concurring specially.

Insofar as the conviction of the defendant is affirmed, I concur in the judgment only. Insofar as the imposition of the death sentence is reversed, I concur in that judgment also, but for reasons which differ from those of the majority.

The defendant was 15 years old at the time the crime was committed. No evidence was offered by the state showing that this defendant had engaged in any criminal activity prior to this time. The evidence that this

defendant was the actual perpetrator of the crime was circumstantial evidence. The co-defendant Eddie Maurice Hawes (see *Hawes v. State,* 239 Ga. 630 (1977)), did not receive the death penalty. I would find that the sentence to death in this case is excessive and disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3).

ON MOTION FOR REHEARING.

HILL, Justice, concurring specially.

In its brief in opposition to motion for rehearing, the state reminds us of the early 1960's: "More than two decades ago another fifteen-year-old, Preston Cobb, was found guilty of murder and sentenced to die in the electric chair. See *Cobb v. State,* 218 Ga. 10, 22 (126 SE2d 231) (1962). Whether or not motivated by the *Cobb* case, the following year the General Assembly drew the line on executing youthful defendants; the line was drawn at seventeen years of age. Ga. L. 1963, pp. 122-123."

Yet the state goes on to contend that that part of the 1963 law applicable here (section 1) was repealed and that the other part (section 2) is not applicable here, so the state contends, or has been secretly repealed.

The state argues that "Succinctly stated, Georgia law no longer precludes the execution of youthful defendants..." down to and including age 13. I shudder at the cruelty of my government.