## 30348. SMITH v. THE STATE.

HILL, Justice.

Defendant appeals his conviction by a jury of kidnapping with bodily injury and sentence to life imprisonment. A motion for new trial was denied. The main issues on appeal involve the admission into evidence of a lineup identification, restriction of cross examination as to the composition of the lineup, a court instruction during the trial as to the victim's presumption of sanity, and challenges to the instructions of the court on alibi and other matters.

Evidence introduced at trial established the following facts: On the night of Saturday, June 15, 1974, a 60-year-old widow was alone at home when a car pulled into the drive at approximately 10:30 or 10:45 according to her calculations. Thinking it was her son, she opened the door to a young man who stated that he was "Doc Smith's boy." This person first determined that she possessed neither a telephone nor a gun, then grabbed and forced her out of the house and into his car by twisting her arm behind her back. At the same time he stated that he meant to kill her. He continued to threaten her as he drove to an abandoned lot, telling her that he was avenging the death of his father.

The assailant stopped the car on a dirt road near a vacant lot and attacked the victim, apparently attempting to rape her. She testified at trial that he tore between her legs with his fingers, resulting in bleeding and lacerations. When he released his grip momentarily to undo his pants, she escaped from the car and hid in the underbrush while the assailant drove back and forth three times looking for her. The victim estimated that this entire episode lasted about 30 minutes, that the trip from her home to the place she escaped took about 15 minutes

and that her assailant looked for her about 10 minutes. The distance from the victim's home to the vacant lot was about 2 miles.

The victim testified that she ran the half mile to the highway and after hiding from passing cars eventually entered a building located nearby. A few seconds later the telephone rang. The victim answered the phone and told the caller, a Mrs. Evans, that she needed help. Mr. Evans was notified of the victim's plight at approximately 1:40 a. m. On the way to the farmhouse, he picked up the victim's son. Both men went to the farmhouse and found the victim, who stated that her arm was hurt but made no other statement as to her injuries. She returned to her home with her son.

Two deputy sheriffs interviewed the victim about 2:20 a. m. She told them she had been kidnapped by a young white male of medium build, with blond hair, an outstanding jawbone, fair complexion, and wearing a navy blue shirt and a white belt. She also told the officers her assailant had identified himself as "Doc Smith's boy." At trial she testified that her assailant had smelled strongly of whiskey. Officer McClendon testifies at trial that the victim appeared nervous and in pain at the time of their investigation.

The officers investigated the area of the alleged attack and testified as to the marks and footprints found there. They then proceeded to the residence of Doc Smith and took the defendant, Skippy Smith, into custody. The defendant was instructed to dress himself in the clothes he had worn the preceding night which were lying beside the bed—a navy blue shirt, dark pants and a white belt. The deputies testified that they told the defendant at the time. he was taken into custody that he was a suspect in the case and advised him of his constitutional rights. The defendant then went to the sheriff's office with the deputies.

On Sunday afternoon, June 16, the defendant was placed in a lineup with 4 other men and was identified immediately by the victim. A hearing was held on a motion to suppress evidence of the lineup identification, and the motion was denied.

At trial the victim identified the defendant as her

assailant. She testified that she did not seek medical treatment for her injuries at once because she was embarrassed. She stated that she went to a doctor on Tuesday, June 18, and on a subsequent occasion for treatment for vaginal lacerations.

One alibi witness testified that the defendant left her trailer at 10:00 or 10:15 that night. Five alibi witnesses testified that they saw him on the night of the attack at various times between 10:00 and 11:00 at a dance about 17 miles from the area of the attack. One of these witnesses testified that the defendant left the dance "somewhere before twelve o'clock"; another testified that she saw him going to his car at the "eleven o'clock break." The defendant did not testify.

1. The defendant alleges that the trial court erred in its denial of the motion to suppress evidence of the victim's identification in that the lineup was impermissibly suggestive. As support for his position he cites testimony adduced at the hearing on the motion to suppress to the effect that he was the only blond male in the lineup, that he was the only person who had a prominent jawbone and was clean shaven, and that he was the only person dressed in a manner similar to the victim's description of her assailant. He further contends that he was forced to turn sideways while the other lineup participants remained in frontal positions and that this had the effect of pointing him out to the victim.

It is clear from the victim's testimony that she had ample opportunity to view her assailant during a face-to-face confrontation with him in her lighted living room for an estimated five minutes before she was abducted. She provided the officers with a fairly detailed description of her assailant. The photograph introduced into evidence as an accurate and true representation of the lineup shows that four of the men, including the defendant, were of similar heights and weights, one was wearing dark pants and another was wearing a dark shirt. The victim identified the defendant unequivocally as her assailant immediately upon viewing the lineup. Apparently she requested a profile view in order to be sure of his identification after she indicated that the defendant was the man who had attacked her.

Assuming that the defendant's contention that the lineup was suggestive has arguable merit, considering the totality of the circumstances we find no substantial likelihood of misidentification. Neil v. Biggers, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972). See also *Yancey v. State,* 232 Ga. 167 (205 SE2d 282) (1974). The victim's identification of the defendant was properly admitted at trial.

2. Defense counsel cross examined a deputy concerning a color photograph taken of the lineup. The defendant contends that the trial court erred in restricting his cross examination by sustaining the district attorney's objection, based on the best evidence rule, to the question "What color hair does number one have?"

It is true, as defendant urges, that the best evidence rule is a rule which is designed to give preferential treatment to the original writing when the contents of a writing are sought to be proved. *Munsford v. State,* 235 Ga. 38, 42 (218 SE2d 792) (1975); *Willingham v. State,* 134 Ga. App. 603 (3) (215 SE2d 521) (1975). The rule therefore is not applicable to this photograph. However, in the case at bar other testimony as to the color of the hair of the participants in the lineup was admitted into evidence. The defendant has failed to show harm constituting grounds for reversal.

3. On cross examination of the victim, the defense showed that the victim had been a patient at Central State Hospital for six months in 1958 and at an earlier time. The district attorney objected. The trial court overruled the objection, saying: "That is a matter of law of this state . . . when she was discharged she was discharged as sane. And until she had been committed again she would have been legally sane and competent under the law, as it was then, as it is now. However, I will allow you to ask her if she had been there, then the jury can make its inferences or whatever they like, but I will overrule the objection in that I will allow you to ask it but will also have to instruct the jury that her release was an absolute restoration to sanity and that anything since her release would be accepted as that of a sane person—that is the law of this State."

The defendant contends that this statement was error in that it was an expression of opinion as to the credibility of the witness and that it was an incorrect statement of the law in this state on restoration to sanity.

The defendant did not question the competency of the victim to testify as a witness (Code §§ 38-1609, 38-1610 et seq.), but chose to question the victim's credibility rather than her competency.

Although release from a mental institution to which a person has been committed does not constitute absolute restoration to sanity (*Troutman v. Troutman,* 223 Ga. 700 (2) (157 SE2d 437) (1967), *Gilbert v. State,* 235 Ga. 501 (1975)), the court's charge at the close of the evidence correctly stated that questions of credibility, weight of evidence, and guilt or innocence were exclusively for the jury and that no ruling by the court was intended as an opinion on these matters. Moreover, the court instructed the jury that identification is a question of fact for determination by the jury and depended upon credibility. The statement of the trial court, in light of the full and correct charge to the jury, was not prejudicial error requiring reversal.

4. The court instructed the jury as follows on the law of alibi: "[The defendant] establishes by his testimony or attempts to establish the fact that he was at a different place and in the law we call this as a defense of alibi, that he was not there and could not have been there.

"I charge you that alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. Any evidence whatsoever of alibi is to be considered on the general case with the rest of the testimony and if a reasonable doubt of guilt be raised by the evidence as a whole the doubt must be resolved in the favor of innocence. Mean by this, Ladies and Gentlemen, that the defendant does not have to first, in the first instance prove that he did not commit this crime, the burden is upon the State from the outset to prove beyond a reasonable doubt that the defendant is guilty of the crime as charged in the indictment."

The defendant contends that the charge given erroneously placed the burden on him to prove he was not present at the scene of the crime. There is no merit to this

contention because the charge given was almost identical to charges approved by this court in *Payne v. State,* 231 Ga. 755 (2) (204 SE2d 128) (1974), and *Paschal v. State,* 230 Ga. 859 (2) (199 SE2d 803) (1973). See in this connection the pattern charge on alibi expressly approved by this court in *Patterson v. State,* 233 Ga. 724, 730 (fn. 2) (213 SE2d 612) (1975).

5. Enumeration 5 asserts error in the failure of the trial court to instruct the jury, without request, on the legal definition of bodily injury in connection with the crime of kidnapping with bodily injury. This enumeration is without merit because bodily injury is a term of common usage requiring no legal definition. *Anderson v. State,* 226 Ga. 35 (2) (172 SE2d 424) (1970); *Dyke v. State,* 232 Ga. 817, 827 (209 SE2d 166) (1974). See also Division 7 of this opinion.

6. Enumeration 6 alleges error in the failure of the trial court to instruct the jury, without request, on the lesser included offense of kidnapping without bodily injury.

This court has held that the failure to charge the law of lesser included offenses in the absence of a timely written request will not constitute reversible error where the evidence does not demand such a charge. *Johnston v. State,* 232 Ga. 268 (3) (206 SE2d 468) (1974); *Brock v. State,* 232 Ga. 47 (2) (205 SE2d 272) (1974). The evidence before the jury in the instant case was sufficient to support a conviction of the offense as charged and did not demand a charge without request on the lesser included offense.

Moreover, today this court has held that it is not error for the trial court, in the absence of a written request, to fail to charge on a lesser crime included in the crime charged in the indictment or accusation (*State v. Stonaker,* 236 Ga. 1 (1976)), regardless of whether the evidence would have authorized or demanded such a charge.

7. The defendant contends that the court erred in its failure to charge, without request, on the law of impeachment of a witness by prior contradictory statements. He urges that statements made by the victim at the commitment hearing were contradicted by her trial testimony in that she did not describe the extent of her

bodily injuries at the commitment hearing. He contends that a charge on impeachment was demanded even in the absence of a written request.

In *Thomas v. State,* 234 Ga. 615, 618 (216 SE2d 859) (1975), the opinion cited prior cases which recognized a difference between a charge which omits instruction on some collateral issue, as opposed to a charge which contains error in the language given in charge.[1] One of those prior cases was *Spear v. State,* 230 Ga. 74 (1) (195 SE2d 397) (1973), where the error asserted was an omission to charge the law on good character as a defense. In *Spear* the court said (230 Ga. p. 75) that the defendant is not relieved of the necessity of requesting instructions except in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence.

In *Tanner v. State,* 228 Ga. 829 (8) (188 SE2d 512) (1972), this court held that in the absence of request it was not error to fail to charge on impeachment of witnesses. *Tanner* is controlling in the case before us. That is to say, the failure to charge on impeachment of witnesses without request is not clearly harmful and erroneous as a matter of law for failure to provide the jury with the proper guidelines for determining guilt or innocence.

8. Enumerations 8, 9 and 10 contend that the verdict was contrary to the law and evidence. The evidence presented at trial, as outlined above, supports the jury's verdict of guilty of kidnapping with bodily injury.

9. Enumeration 11 alleges error in the overruling of the motion for new trial, as amended. Each of these contentions has been dealt with separately above.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs in the judgment only.*

ARGUED OCTOBER 6, 1975 — DECIDED JANUARY 6, 1976.

---

[1]*State v. Stonaker,* supra, holding that it is not error for the trial court, in the absence of request, to fail to charge on a lesser included crime, is an "omission" case.

12

*Stephen A. Land, H. G. Bozeman,* for appellant.
*B. B. Hayes, District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.