**Jack Howard POTTS, Petitioner,**

v.

**Walter D. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent.**

**Civ. A. No. C80–1078A.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 6, 1983.

Jack Howard Potts, pro se.

Frank L. Derrickson, Millard C. Farmer, Joseph M. Nursey, Team Defense Project, Ralph Goldberg, The Law Project, Atlanta, Ga., for petitioner.

Thomas J. Charron, Dist. Atty., Marietta, Ga., Raphael Banks, Dist. Atty., Canton, Ga., John Dunsmore, Susan Boleyn and Michael Johnson, Asst. Attys. Gen., State of Ga., Atlanta, Ga., for respondent.

## ORDER

MOYE, Chief Judge.

This consolidated action includes two habeas corpus petitions. The first, Civil Ac-

tion No. C80–1078A, pending in the Atlanta Division of this Court, involves constitutional challenges to petitioner's conviction of kidnapping and resulting sentence of death, following a multi-county crime spree, in Cobb County, Georgia, Superior Court. The second petition, Civil Action No. C80–50G, pending in the Gainesville Division of this Court, involves constitutional challenges to petitioner's conviction of murder, and subsequent sentence of death, in the Superior Court of Forsyth County, Georgia. The Court now has before it the substantive issues raised by the two petitions following an evidentiary hearing held on June 4, 1982, at which petitioner was physically present.

Petitioner's attorneys, including one attorney appointed and to be compensated by the Court, have filed pursuant to the Court's request and directions a 104-page document setting forth the issues of law and fact raised by petitioner, his proposed findings of fact and statements of law in support thereof. The state has filed a brief in response thereto paralleling the form of petitioner's document. This order likewise will conform subject-wise and in sequence to petitioner's document in an effort to make a direct ruling on each issue.

### Issue One (Cobb County)

Petitioner contends that at his capital trial, in Cobb County, he was indicted on charges of kidnapping with bodily injury,—but that the jury failed to find bodily injury and thus, in fact, he was convicted only of simple kidnapping—a conviction which would not authorize a death sentence.

The indictment upon which petitioner was convicted in Cobb County charged (Respondent's Exhibit No. 1, pp. 614–615):

Count Three. And the Grand Jurors aforesaid in the name and behalf of the citizens of Georgia, further charge the accused with the offense of Felony for that the said accused on the 8th day of May, 1975, in the county aforesaid with force and arms did unlawfully then and there abduct Michael D. Priest, a person, without lawful authority and held such

person against his will and did kill the said Michael D. Priest by shooting him with a certain pistol; the said killing of Michael D. Priest having occurred while in the unlawful custody of the accused in Forsyth County, Georgia, and the said Michael D. Priest having remained in the unlawful custody of the accused from the time of his abduction in Cobb County, Georgia, until the time of his homicide in Forsyth County, Georgia; contrary to the laws of this State, the good order, peace, and dignity thereof.

Georgia Code 26–1311 (now 16–5–40) upon which Count III of the Cobb County indictment was predicated, provides:

26–1311 Kidnapping

(a) A person commits kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will.

\*    \*    \*    \*    \*    \*

A person convicted of kidnapping shall be punished by imprisonment for not less than one nor more than 20 years: Provided that a person convicted of kidnapping for ransom shall be punished by life imprisonment or by death; and Provided, further, that if the person kidnapped shall have received bodily injury, the person convicted shall be punished by life imprisonment or death.

The trial was bifurcated into an innocence/guilt phase and a sentencing phase upon an initial finding of guilt. In his charge to the jury at the innocence/guilt phase, the trial court stated (Respondent's Exhibit 1, p. 624):

Members of the jury, Count Three of this indictment charges kidnapping and at this time I instruct you a person commits kidnapping when he abducts or steals away any person without legal authority or warrant and holds such person against his or her will.

The court informed the jury that its verdict at this phase of the trial must be only as to guilt or innocence "without any consideration of punishment." (Respondent's Exhibit 1, p. 628). The jury's verdict was "We,

the jury, find the defendant guilty as to Count Three, kidnapping." (Respondent's Exhibit 1, p. 637).

At the sentencing phase of the case, the court charged the jury as follows (Respondent's Exhibit 1, pp. 644–649).

THE COURT: Ms. Smith and gentlemen of the jury, you have found the defendant guilty of the offense of kidnapping, Count Three, and guilty of the offense of armed robbery, Count Four. It is now your duty to determine the penalty that shall be imposed as punishment for those offenses.

Under the law of this state every person guilty of the offense of kidnapping and armed robbery shall be punished by life in the penitentiary or death by electrocution.

You are to apply the remaining instructions which will be given to you by me and determine whether the defendant should be punished by death or life imprisonment. In reaching this determination you are authorized to consider all the evidence received by you in open court in both phases of the trial. You are authorized to consider all the facts and circumstances of the case.

In the event that your verdict is life imprisonment the punishment that the defendant would receive would be imprisonment in the penitentiary for and during the remainder of his natural life. If that be your verdict, you would add to the verdict already found by you, an additional verdict as follows: "And we fix his punishment as life imprisonment."

You may, however, if you see fit and if that be your verdict, fix his punishment as death, which would require a sentence by the court of death by electrocution. If that be your verdict, you would add to the verdict already found by you, an additional verdict as follows: "And we fix his punishment as death."

I charge you that before you would be authorized to find a verdict fixing a sentence of death by electrocution, you must find evidence of statutory aggravating circumstances, as I will define to you later in the charge, sufficient to authorize the supreme penalty of the law.

I charge you that a finding of statutory aggravating circumstances shall only be based upon evidence convincing your mind beyond a reasonable doubt as to the existence of one or more of the following factual conditions in connection with the defendant's perpetration of the acts for which you have found him guilty. They are:

(1) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind, or an aggravated battery to the victim.

(2) The offense of kidnapping of Michael Priest was committed while the offender was engaged in the commission of another capital felony, to-wit: armed robbery of Michael Priest.

(3) The offense of armed robbery of Michael Priest was committed while the offender was engaged in the commission of another capital felony, to-wit: kidnapping of Michael Priest.

(4) The offense of kidnapping of Michael Priest was committed while the offender was engaged in the commission of another capital felony, to-wit: murder of Michael Priest.

Further, members of this jury, I give you these instruction:

(1) Aggravated circumstances are those which increase the guilt or enormity of the offense or add to its injurious consequences.

(2) Mitigating circumstances are those which do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame.

Members of the jury, if you find that either or more than one aggravating circumstance existed beyond a reasonable doubt, and you recommend the death penalty, then the court is required by law to sentence the defendant to death.

On the other hand you may, if you see fit, whether aggravating circumstances existed or not, recommend mercy for the defendant. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendations with or without a reason. If this should be your finding, then the court is required by law to sentence the defendant to life imprisonment.

The statutory instructions that you are authorized to consider will be submitted in writing to you for your deliberation. If you fix his punishment as death, you must also designate in writing, as a part of your written verdict, the aggravating circumstance or circumstances which you find to be true beyond a reasonable doubt.

Members of the jury, should your verdict be death as to Count Number Three, kidnapping, the verdict as completed, including the portion of the verdict you have already published, would be: "We, the jury, find the defendant, Jack Howard Potts, guilty of kidnapping, and we find aggravating circumstances as follows," inserting there the aggravating circumstance or circumstances in the language set forth that I will send out to you, "and we fix his punishment as death by electrocution."

Should your verdict as to punishment, Count Number Three, kidnapping, be life imprisonment, to complete it include the portion of the verdict you have already published as follows: "We, the jury, find the defendant, Jack Howard Potts, guilty of kidnapping and we fix his punishment as life imprisonment."

\* \* \* \* \* \*

Members of the jury, the verdict should be agreed to by all twelve of you members; it must be in writing and entered upon the indictment, dated, and signed by your foreman, and returned into court for publication.

At this time you may retire and begin your deliberation. After you have received the indictment, you will also have the evidence with you that was intro-duced here during the trial of the case, including documentary evidence presented on the pretrial—or, presentence hearing—excuse me—the presentence hearing, and then determine the penalty or punishment that should be imposed in this case.

At this time you may retire to complete your verdict by fixing the defendant's punishment for the offenses of kidnapping and armed robbery; that is, Count Three and Four. Thank you very much.

The verdict was: "We, the jury, find the defendant guilty as to Count Three, kidnapping, and fix the sentence as death. The offense of kidnapping of Michael Priest was committed while the offender was engaged in the commission of another capital felony, to-wit: armed robbery of Michael Priest." (Respondent's Exhibit 1, p. 652).

A lawful death sentence under Georgia Code Section 26–1311, as related to the situation here presented, has three required elements: (1) conviction of kidnapping pursuant to Code Section 26–1311(a), plus (2) the receipt of bodily harm by the person kidnapped, and (3) a finding of evidence of a statutory aggravating circumstance. (Respondent's Exhibit 1, p. 645).

There is no issue before the Court as to the existence or adequacy of the record as to elements 1 and 3. The issue is as to whether the jury found, or was required to make a specific finding or verdict, as to the second element.

Petitioner asserts that "simple" kidnapping and "kidnapping with bodily harm" are two *separate* offenses, and therefore the verdict is insufficient in form to support the death sentence. Under this view of the nature of the offense defined in Code Section 26–1311, the element of bodily harm to the kidnapped person would be an essential element of the crime to be proved at the guilt/innocence trial, with instructions, presumably on a lesser included offense of "simple" kidnapping. See *Smith v. State*, 236 Ga. 5, 10, 222 S.E.2d 357 (1976). That was not done here despite the

holding of the Supreme Court of Georgia following its mandatory sentencing hearing: "In Case No. 32857 the appellant received sentence[s] of death for the crime[s] of kidnapping with bodily injury ... The jury found the offense of kidnapping with bodily injury (the bodily injury being the death of Michael Priest) to have been committed while the offender was engaged in the commission of another capital felony, armed robbery of Michael Priest, ... The death penalty for kidnapping with bodily injury is not unconstitutional where the victim is killed."

Other cases by the Supreme Court of Georgia persuade this Court that the question of whether the kidnapping is punishable as a capital offense is a question of the grade of crime charged in the indictment and proved at the innocence/guilt phase of the trial. *Allen v. State*, 233 Ga. 200, 203, 210 S.E.2d 680 (1974); *Smith v. State*, 236 Ga. 5, 10, 222 S.E.2d 357 (1976).

Here the indictment was sufficient to charge the capital crime. There is no contention otherwise.

Here the evidence shows clearly that the kidnapped person suffered extreme bodily injury—death. There is no contention otherwise.

■ However, the court never instructed the jury at the guilt/innocence phase that it was considering the charge of a crime involving bodily injury.

The jury, however, returned a verdict of guilty as to Count III—which charged the kidnapping and killing of Michael Priest.

■ We believe, however, that where the life or death of a human being depends upon the jury's determination of certain required categories of conditions, or happenings, as here, such determination cannot be left to inference alone. This position is reinforced by *Patrick v. State*, 247 Ga. 168, 170, 274 S.E.2d 570 (1981), although we recognize the factual difference between the two situations. In that case the court held that a finding of "kidnapping" only would not serve as an aggravating circumstance in a murder case under

Ga.Code 27–2534.1, allowing the death penalty to be imposed if "The offense of murder 'was committed while the offender was engaged in the commission of another capital felony'" because, as the Court said "Simple kidnapping is not a capital felony ... kidnapping with bodily injury is. The court here charged only 'kidnapping' and the jury found only 'kidnapping.'" That is all the trial court and jury did here. We believe specific charges by the Court and specific findings by the jury (by verdicts) as to all the required enhancing or aggravating factors were required, and, in their absence, petitioner's conviction must be and hereby is vacated and the petitioner remanded for retrial.

### Issue Two (Cobb County)

■ Petitioner contends that his Cobb County sentence of death does not pass muster under the Eighth and Fourteenth Amendments because of a lack of finding by the jury, not only of kidnapping with bodily injury, but in addition, of a murder in connection with this capital offense.

To the extent that this argument involves failure to make findings necessary to enhance the kidnapping offense from simple kidnapping to kidnapping with bodily injury, the Court agrees with petitioner, as set forth with respect to issue one; to the extent petitioner seems to argue that the bodily injury to the kidnapped person required to make kidnapping with bodily injury punishable by death without any extrinsic aggravating factor is the capital offense of murder, the Court might also agree, if that were the case, but the jury in Cobb County did not predicate its death verdict upon the kidnapped person's murder as the aggravating capital felony, but rather found armed robbery as the aggravating capital felony. Thus we reject petitioner's claims under issue two.

### Issue Three (Forsyth County)

Petitioner contends that his trial for murder in Forsyth County, subsequent to his kidnapping conviction in Cobb County discussed hereinabove, placed him twice in

jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

This issue was discussed at length, in relation both to the federal Constitution and state constitution and statutes in *Potts v. State*, 241 Ga. 67, 77–80, 243 S.E.2d 510, 519–520:

11. Appellant's first enumeration of error in case No. 33259 alleges that the trial court erred in denying his plea of former jeopardy. The appellant contends that, having been convicted of kidnapping with bodily injury of Michael Priest in Cobb County, jeopardy attached to the homicide of Michael Priest, and therefore, appellant's subsequent conviction in Forsyth County for the murder of Michael Priest constitutes double jeopardy.

The Georgia Code distinguishes between two aspects of double jeopardy. "First, there are limitations upon multiple prosecutions arising from the same criminal conduct. Code Ann. § 26–506 entitled, 'Multiple prosecutions for same conduct' requires all crimes arising from the same conduct to be prosecuted in a 'single prosecution' *provided they are in the same jurisdiction* and are known to the prosecutor unless the court in the interest of justice orders separate trials. Code Ann. § 26–507 sets out in detail when a second prosecution is barred." (Emphasis supplied.) *State v. Estevez*, 232 Ga. 316, 318 (206 SE2d 475) (1974). A prosecution is not barred within the meaning of Code Ann. § 26–507, "if the former prosecution was before a court which lacked jurisdiction over the accused or the crime." This is the procedural aspect or the bar to multiple prosecutions, intended to prevent an accused from being unduly harassed by or threatened by successive criminal prosecutions.

In Georgia "[A]ll criminal cases shall be tried in the county where the crime was committed..." Code Ann. § 27–1101. In the instant case, it is undisputed that the murder of Michael Priest took place in Forsyth County and that the kidnapping with bodily injury took place in Cobb County. As a matter of law, the two offenses were not within a single court's jurisdiction, and could not have been tried together. Therefore, we find no procedural bar to the appellant's subsequent prosecution for the murder of Michael Priest in Forsyth County.

"The second policy expressed in the 1968 Georgia Criminal Code limits the convictions or punishments that may be imposed for crimes arising from the same criminal conduct. This is generally referred to as the *substantive* aspect of the double jeopardy principle in that it relates to the penalty for criminal conduct as distinguished from the procedural aspects of successive prosecutions discussed above." (Emphasis supplied.) *Estevez*, supra, p. 319 [206 S.E.2d 475].

When the same conduct of an accused establishes the commission of more than one crime, the accused may be prosecuted for but may not be convicted of more than one crime if, "[O]ne crime is included in the other." Code Ann. § 26–506(a)(1). Code Ann. § 26–505(a) and (b) establish *alternative* rules for determining when one crime is included in another as a matter of fact (Code Ann. § 26–505(a)) *or* as a matter of law (Code Ann. § 26–505(b)) so as to bar conviction and punishment for more than one crime.

Recently, in *Pryor v. State*, 238 Ga. 698, 701 (234 SE2d 918) (1977), we held that murder and kidnapping with bodily injury are not included crimes as a matter of law. However, some confusion surrounds the issue of whether these two offenses are included as a matter of fact as a result of the discussion in *Pryor* of a hypothetical fact situation not then before the court.

As a matter of fact a crime is included when, "[I]t is established by *proof of the same or less than all the facts* of a less culpable mental state than is required to establish the commission of the crime charged." (Emphasis supplied.) Code Ann. § 26–505(a). For proof of kidnapping with bodily injury it is necessary that the evidence show an unlawful ab-

duction or stealing away and the holding of a person, plus the infliction of some bodily injury upon that person. Code Ann. § 26–1311. There is no requirement to prove death of the person kidnapped even if the injuries do result in death.

The indictment in Case No. 32857 alleged as the bodily injury the *killing* of Michael Priest. Under such an indictment, it was necessary for the state to prove *death.* However, the state had to prove the additional element of an unlawful abduction against the will of Michael Priest to accompany his killing in order to establish kidnapping with bodily injury. There was no requirement in the Cobb County case that the state prove the existence of malice aforethought, which was a necessary element of the murder conviction in Case No. 33259.

No matter what may have been put into evidence, the key consideration is whether one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the crime charged.

We hold that as a matter of fact, as well as a matter of law, the murder of Michael Priest and the kidnapping of Michael Priest with bodily injury were not included offenses so as to bar his being prosecuted and subsequently convicted of both crimes.

We do not treat here the issue of whether an allegation of proof which merely elevates the seriousness of the offense and the severity of punishment can constitute former jeopardy or whether a "twice use" for the crime and the punishment is permissible, since these issues have previously been discussed in the *Pryor* decision.

There being no procedural bar to appellant's prosecution for the murder of Michael Priest nor any substantive bar to his being convicted and punished for that crime, the trial court did not err in denying appellant's plea of former jeopardy. The almost identical argument involving the same constitutions and laws was made

in *Stephens v. Zant,* 631 F.2d 397, 400–402 (5th Cir.1980), and denied by the court of appeals:

## I. DOUBLE JEOPARDY

The Twiggs County indictment for kidnapping recited that he killed the kidnap victim. The third count reads as follows:

### COUNT III

And the aforesaid Grand Jurors ... charge and accuse Alpha Otis O'Daniel Stephens ... with the offense of KIDNAPPING for that the said Alpha Otis O'Daniel Stephens ... in the county aforesaid ... did unlawfully and with force and arms abduct and steal away Roy Asbell, a person, without lawful authority, and held Ray Asbell against his will and did physically abuse and did inflict and cause bodily injury to the body of Roy Asbell by beating, hitting and kicking Ray Asbell and did threaten to kill Roy Asbell and then did kill Roy Asbell by shooting Roy Asbell, contrary to the laws of said State ....

Petitioner argues that by stating that in the course of the kidnapping he killed Asbell, the State unwittingly accused him of the crime of murder because the indictment alleged all the elements of murder. When he pled guilty under Count III of the Twiggs indictment, he admitted every fact averred in the indictment. At that point, his argument continues, he ran the risk— i.e., was placed in jeopardy—of a conviction of murder under a felony-murder theory. Since under Georgia law felony murder and malice murder are different ways in which one offense may be committed, *Leutner v. State,* 235 Ga. 77, 218 S.E.2d 820 (1975), he argues the State was barred by the Double Jeopardy Clause from prosecuting him for malice murder in Bleckley County.

The Supreme Court of Georgia responded to petitioner's argument by holding that malice murder and kidnapping are not the same in law or in fact and thus are not the same offense under state law. It also determined that the state legislature intended, under the test in Ga.Code Ann. §§ 26–

505 to 507, to permit multiple prosecutions and punishments in a case such as this. *Stephens v. Hopper*, 241 Ga. [596] at 598–600, 247 S.E.2d [92] at 94–95. *Cf. Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (holding that the Double Jeopardy Clause prohibits courts from imposing greater penalties than the legislature intended).

While this is the definitive interpretation of Georgia law and binding upon this Court, *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975), the holding does not adequately respond to petitioner's argument. Petitioner's contention is not that kidnapping and malice murder are the "same offense." Rather, he asserts that felony murder was charged in the indictment, that by pleading guilty he was placed in jeopardy of conviction for that crime and therefore the state is barred from any further attempt to prosecute him for murder.

■ Petitioner's contention that he was placed in jeopardy of a conviction for murder in Twiggs County is erroneous, because there was no jurisdiction in that county to try him for the homicide. The rule is absolute that a person is not put in jeopardy unless the court in which he was tried the first time had jurisdiction to try him for the charge the person now seeks to avoid. The Supreme Court has twice spoken to the point.

> We assume as indisputable, on principle and authority, that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged.

*Grafton v. United States*, 206 U.S. 333, 345, 27 S.Ct. 749, 751, 51 L.Ed. 1084 (1907).

> An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense.

*United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896).

The Georgia Constitution requires that, unless an impartial jury cannot be obtained, "all criminal cases shall be tried in the county where the crime was committed." Ga. Const. Art. VI, § XIV, ¶ VI (Ga.Code Ann. § 2–4306). The Supreme Court of Georgia specifically held in this case that the Twiggs County court did not have jurisdiction to try the murder offense. *Stephens v. Hopper*, 241 Ga. at 599, 247 S.E.2d at 95. The Fifth Circuit held in *Tennon v. Ricketts*, 574 F.2d 1243, 1245 (1978), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979), that "it is for the Georgia Supreme Court, not this Court, to expound the decisional rules of that, jurisdiction." *Accord, Hortonville Education Assn.*, 426 U.S. 482, 488, 96 S.Ct. 2308, 2312, 49 L.Ed.2d 1 (1976); *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975); *Eisenstadt v. Baird*, 405 U.S. 438, 441–42, 92 S.Ct. 1029, 1032, 31 L.Ed.2d 349 (1972) (all holding that the highest state court is the final authority on questions of state law and federal courts are bound to accept its interpretation of state law.)

■ The question of the jurisdiction of a state trial court in a state criminal prosecution is clearly a question of state law, which binds this Court. Since the Twiggs Superior Court had no jurisdiction to hear the murder offense, petitioner was not placed in jeopardy of a murder conviction, under either a malice murder or felony murder theory in the Twiggs County proceedings.

■ Petitioner was, however, placed in jeopardy for the offense of kidnapping with bodily injury. The Double Jeopardy Clause bars a subsequent prosecution for any offense deemed the "same offense" under the test in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provi-

sion requires proof of a fact which the other does not.

The Supreme Court held in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 58 L.Ed.2d 187 (1977), that a lesser or greater included offense is the "same offense" for double jeopardy purposes. It thus becomes necessary to determine whether petitioner's murder conviction was for the "same offense" as his kidnapping charge.

■ Malice murder and kidnapping with bodily injury have separate and distinct elements and require proof of different facts. Kidnapping consists of abducting another unlawfully and against his will, plus inflicting some bodily injury. Malice murder consists of killing another with malice aforethought. Thus, even if they involve the same transaction and considerably overlap each other factually, they are not the "same offense" under *Blockburger.* In addition, as found by the Georgia Supreme Court, the Georgia legislature intended multiple punishment for kidnapping and malice murder in a case such as this. *Stephens v. Hopper,* 241 Ga. at 599–600, 247 S.E.2d at 95–96.

■ As felony murder is defined under Georgia law, the underlying felony is a lesser included offense of felony murder and thus the same offense under *Blockburger.* See *Young v. State,* 238 Ga. 548, 233 S.E.2d 750 (1977); *Reed v. State,* 238 Ga. 457, 233 S.E.2d 369 (1977). Once the State tried and convicted petitioner for kidnapping, it would be barred from prosecuting him for felony murder only if the underlying felony upon which that prosecution was based were that same kidnapping. *Illinois v. Vitale,* [447] U.S. [410], 100 S.Ct. 2260, 65 L.Ed.2d 228. See *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715; *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

■ We have examined the record closely to see whether the Bleckley County murder prosecution was based in any part on a theory of a felony murder with the underlying felony being the kidnapping of Roy Asbell. The record clearly shows that peti-

tioner was indicted, tried and convicted solely on the grounds that he committed murder with malice aforethought. The trial judge specifically instructed the jury on the requirement of malice.

I further charge you that on the trial of a defendant for the offense of Murder the burden is on the State to prove malice, either expressed or implied, and unless the State proves malice beyond a reasonable doubt there can be no verdict of guilty of Murder, and you should acquit of that charge. For as I said, there can be no Murder without malice.

Where, as here, it is clear petitioner was tried and convicted for malice murder and that crime was not the "same offense" as the kidnapping with bodily injury for which he was convicted in the first proceeding, the Double Jeopardy Clause does not bar the malice murder conviction regardless of whether malice murder and felony murder are the "same offense" under the *Blockburger* test. Petitioner's double jeopardy argument is accordingly rejected.

■ To the extent that this case possibly is not absolutely on all fours with *Stephens, supra,* the Court now holds, based on the reasoning in *Stephens,* that the action of the Cobb Superior Court in charging the jury that it could consider the victim's "murder" as an aggravating factor upon which it could predicate a death penalty in the Cobb County kidnapping case did not constitute former jeopardy with respect to the Forsyth County malice murder indictment (Respondent's Exhibit 2, p. 7) and conviction.

■ The only additional argument which petitioner seems here to be making is that the failure of the Cobb County jury to find the death of Michael Priest as an aggravating circumstance collaterally estops a factual finding by the Forsyth County jury of an essential element of the murder charge there, the death of Michael Priest. But a failure to make a finding is not the equivalent of a negative finding, at least where a finding on that particular issue one way or the other is not legally required. Here one

aggravating circumstance was all the Cobb County jury was required to make to invoke the death penalty although the Court gave it the choice of making several such findings. Its mere failure to find the "murder" of Michael Priest as an aggravating circumstance does not estop the State from proving Priest's death in the Forsyth County murder trial.

Therefore petitioner's argument as to double jeopardy with respect to the Forsyth County conviction is rejected.

### Issue Four (Forsyth County)

■ Petitioner contends that since one of the three aggravating circumstances used to support his death sentence in Forsyth County was invalidated by the Georgia Supreme Court, its failure to reverse the death sentence based on that invalid aggravating circumstance deprived petitioner of his rights under the Eighth and Fourteenth Amendments to the Constitution.

The Georgia Supreme Court held *Potts v. State, supra,* 241 Ga. 87, 243 S.E.2d 510:

In Case No. 33259, the jury found as statutory aggravating circumstances to the murder of Michael D. Priest, "(1) armed robbery of Eugene Robert Snyder; (2) the kidnapping of the person of Michael D. Priest resulting in bodily injury to said person; (3) the armed robbery of Michael D. Priest." Code Ann. § 27–2534.1(b)(2). The evidence in Case No. 33259 supports each of the statutory aggravating circumstances found by the jury.

The imposition of two death sentences on the basis of mutually aggravating circumstances cannot be upheld. *Gregg,* supra. However, where the death sentences are legally and factually supported by additional aggravating circumstances, no violation of *Gregg,* supra, is present. *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975).

In Case No. 33259, without the armed robbery of Michael Priest, which was used to support the death sentence for kidnapping in Case No. 32857, the death sentence for murder is adequately supported by either of the two remaining statutory aggravating circumstances.

Although we note in this case that the infirmity in the aggravating circumstance struck by the Georgia Supreme Court was not constitutional, and the rationale of that holding possibly eliminated by this Court's action is vacating the Cobb County conviction (Issue One), nevertheless we are squarely bound by the holding of the Court of Appeals for the Fifth Circuit in the opinion of *Stephens v. Zant, supra,* 631 F.2d 405–406 (1980), which has become a part of the Eleventh Circuit law (*Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)), and must grant the writ of habeas corpus, and remand the case to the Superior Court of Forsyth County, Georgia for further proceedings.

### Issue Five (Cobb County)

■ Petitioner contends that the Cobb County jury was improperly selected in that persons who did not make it unmistakably clear that they would automatically vote against capital punishment were systematically excluded from the jury in violation of petitioner's rights under the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

We agree, *Witherspoon v. Illinois,* 391 U.S. 510, 521, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968). See discussion of Issue Six.

### Issue Six (Forsyth County)

■ Petitioner contends that the Forsyth County jury which tried him was improperly selected in that persons who did not make it unmistakably clear that they would automatically vote against capital punishment were systematically excluded from the jury in violation of petitioner's rights under the Sixth, Eighth and Fourteenth amendments to the Constitution of the United States.

During the Forsyth County voir dire, eight jurors were struck for cause on the basis of their conscientious scruples against the death penalty. As to the two

jurors involved in this habeas corpus, the following occurred at voir dire. (Tr. Forsyth Co. 94–103)

MR. MILLS [prosecutor]: Ms. Free, would it be your opinion that you would vote against the death penalty, regardless of what transpired at the trial:

JUROR FREE: Yes.

MR. MILLS: I am going to ask you another question, just to make sure that you are absolutely certain of that position. Are you certain that that is the way you feel?

JUROR FREE: Yes.

MR. MILLS: Would it be your attitude and your opposition to the death penalty that in your opinion it would effect [sic] your verdict with regard to guilt?

JUROR FREE: Yes.

MR. MILLS: The State challenges this juror for cause, Your Honor.

THE COURT: Do you have any questions of this juror, Mr. Watson?

MR. WATSON: Yes. How long have you entertained this feeling that you have about capital punishment?

JUROR FREE: Since they re-instated it.

MR. WATSON: Did you understand the question that the Assistant District Attorney asked you, that regardless of the evidence in this case, would you be opposed—not withstanding how gruesome the evidence might be, or how certain the evidence might be—to capital punishment?

JUROR FREE: I don't believe in killing anybody.

THE COURT: Now the next one that I have is Mr. Hugh Henderson.

MR. MILLS: Mr. Henderson, I will ask you if it would be your opinion that you would have to vote against the death penalty regardless of what happened, or what transpired during the trial in this case?

JUROR HENDERSON: Yes sir.

MR. MILLS: Would the fact that you are so opposed to capital punishment effect [sic] your verdict with regard to the issue of guilt? Do you understand what I mean?

JUROR HENDERSON: Yes sir, and it would.

MR. MILLS: You think that it would effect [sic] your verdict with regard to the issue of guilt?

JUROR HENDERSON: Yes sir.

The fundamental criteria upon which this challenge must be resolved are set forth in *Witherspoon v. Illinois,* 391 U.S. 510, 522–523, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968), where the Court held that the state retains the right to exclude only those veniremen who

> make unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*

(Emphasis in original). *See Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1979); *Battie v. Estelle,* 655 F.2d 692, 693 (5th Cir.1981).

The two prongs of *Witherspoon* are disjunctively and not conjunctively joined by an "or."

Petitioner's argument here is directed solely against the first prong. The two jurors' affirmative responses that their attitude toward the death penalty would affect their verdicts on the issue of guilt seem to the Court squarely responsive to the second prong of the *Witherspoon* formula, and petitioner's challenge here is rejected.

### *Issue Seven (Cobb County)*

██ Petitioner contends that his Cobb County conviction is invalid because of the prosecution's knowing refusal to reveal a plea offer of ten years, which would not increase even if rejected, to the chief witness against petitioner.

The Court rejects this claim. The evidence does not support the existence of "any understanding or agreement" as

would be required to be disclosed under *Giglio v. U.S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), but rather merely the communication to the witness's attorney, now representing petitioner, of the prosecutor's personal evaluation of the case against the witness in terms of time to be served.

### Issue Eight (Forsyth County)

■ Petitioner contends that the charge of the Forsyth County trial court to the jury during the guilt/innocence phase of the trial violated the petitioner's right to due process of law under the Fourteenth Amendment to the United States Constitution by shifting the burden of proof of the essential elements of the offense of murder away from the state and forcing petitioner to disprove these elements.

Petitioner points to pages 841–842 of the transcript of the Forsyth County trial to support his contention, and those portions do seem to contain an element of burden shifting by reference to presumptions. However, the charge as a whole clearly places upon the prosecution the burden of proving intent (the element as to which petitioner contends the charge was faulty) beyond a reasonable doubt as the issue was specifically raised in the defense of insanity. See Transcript pp. 855–859, particularly pages 857–859.

Petitioner's contention under this issue is rejected.

### Issue Nine (Cobb County)

■ Petitioner contends that at his Cobb County trial he did not have the effective assistance of counsel required by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

The thrust of petitioner's claim is that his appointed counsel failed sufficiently to investigate his troubled background to be able to make an adequate presentation at the bifurcated sentencing hearing following his adjudication of guilt, and instead did not do so, despite an amplitude of material available to make a strong showing of mitigating factors which might have per-

suaded the jury to impose a life, rather than death, sentence.

In analyzing the evidence on this issue, we are guided by *Adams v. Balkcom*, 688 F.2d 734, 738–740 (11th Cir., Oct. 8, 1982); *Proffitt v. Wainwright*, 685 F.2d 1227 (11th Cir., Sept. 10, 1982); *Young v. Zant*, 677 F.2d 792 (11th Cir., May 14, 1982); *Goodman v. Balkcom*, 684 F.2d 794 (11th Cir., Sept. 3, 1982); and *Washington v. Strickland*, 673 F.2d 879 (5th Cir., Unit B, April 23, 1982).

The evidence shows that the petitioner was remarkably uncooperative and uncommunicative with counsel, thus rendering difficult an "Informed evaluation of potential defenses to criminal charges and a meaningful discussion with one's client of the realities of his case...." as mandated in *Gaines v. Hopper*, 575 F.2d 1147, 1149–50 (5th Cir.1978), rendering evidence and information adduced from others more important. With respect to mitigating circumstances to be presented at a sentencing hearing, this information would necessarily have come from friends, relatives and acquaintances. This required investigative activities, obviously, to uncover. Thus, in this case, pretrial investigation and preparation preeminently was the key to effective representation. *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir.1979). Having in mind the proposition that we cannot judge whether the legal assistance afforded was or was not adequate by hindsight, *Adams v. Balkcom*, *supra*, 688 F.2d 758, we think, and hold, that, even considering the date of trial (March 1976) when the law of effective assistance at a sentencing hearing was only in its infancy, nevertheless, considering the totality of the circumstances in the entire record, the assistance at this Cobb County trial fell short, and petitioner did not receive the effective assistance of counsel at that trial.

### Issue Ten (Forsyth County)

Petitioner contends that at his Forsyth County trial he did not have the effective assistance of counsel required by the Sixth,

Eighth, and Fourteenth amendments to the United States Constitution.

The thrust of petitioner's argument here is likewise directed towards preparation of and presentation of evidence at the bifurcated sentencing place of his trial.

██ Guided by the same legal authority and mandates as set forth with respect to Issue Ten, the Court finds that the petitioner did secure the effective assistance of counsel at the Forsyth County trial, recognizing that the end product and result were the same, but feeling that the search for such evidence was adequately made, and the decisions as to use and non-use based on rational trial strategy for which an attorney cannot be faulted, just as we feel that in the Cobb County case the ultimate sentencing trial strategy was based on ignorance, not on the weighing of different courses of action.

### Issue Eleven (Cobb County)

██ Petitioner contends that at his Cobb County trial he was denied due process of law and the right to a rational sentencing procedure by the presentation of inflammatory hearsay testimony alleging Potts had committed previous homicides.

The evidence complained of was admitted at the guilt/innocence place of the trial. The Supreme Court of Georgia has held that to be appropriately admitted as "res gestae." *Potts v. State, supra,* 241 Ga. 73, 243 S.E.2d 510. This Court agrees. Petitioner's contention under Issue Eleven is rejected.

### Issue Twelve (Forsyth County)

██ Petitioner contends that the prosecutor's recital to the jury from the United States Supreme Court and Georgia Supreme Court cases during the penalty phase of his case violated his right to a rational sentencing hearing and right to due process of law as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

In addition to reading excerpts from *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct.

2909, 49 L.Ed.2d 859 (1976), the prosecutor also read from *Eberhart v. State,* 47 Ga. 598, 610 (1872):

MR. MILLS (Reading): We have no sympathy with that sickly sentimentality that springs into action whenever a criminal at length is about to suffer for a crime. This may be the sign of a tender heart, but it is also a sight of one not under proper regulation. Society demands that crime be punished, and that criminals be warned, and the false humanity that shudders when justice is about to strike is a dangerous element for society. We have too much of this mercy. It is not true mercy. It only looks to the criminal. We must insist upon the mercy to society and upon justice for the poor woman whose blood cries out against her murderers. That criminals go unpunished is a disgrace to our civilization. We have reaped the fruits of it in the frequency with which bloody deeds occur. A stern, unbending, unflinching administration of penal laws without regard to position, or sex, as it is the highest mark of civilization, also is the surest mode to prevent the commission of offense. (Tr. Forsyth Co. 928).

Jackie Potts's defense attorney made a timely objection to the prosecutor's recital from this case. Tr. Forsyth Co. 928.

The Georgia Supreme Court has held that the State's practice of reading passages from *Eberhart* with the purpose of influencing the jury to impose the death penalty is improper and disapproved. *Hawes v. State,* 240 Ga. 327, 240 S.E.2d 833 (1977).

The prosecutor defended his actions on grounds that the suggestive quotations were addressed not to the jury, but to the "court" (Tr. Forsyth Co. 927): "I am not addressing this to the issue of punishment. I am addressing it solely to the issue of duty to the law and duty to the public."

There was no point in reading the selected passages to the Court. They obviously were not meant to influence his charge to the jury or performance of other judicial duty. But they clearly were intended to

influence the jury despite counsel's representations to the contrary, and being cases from eminent benches, read with the apparent approval of the Court where the jury could observe and hear, could be expected to influence them—towards death, not life imprisonment.

The sentencing phase of a capital punishment case, as now conducted pursuant to U.S. Supreme Court opinions, is a delicate process in which the jury must be equitably informed of its duties and options. The effect of reading from *Eberhart*, particularly, was to attempt to give judicial imprimatur to the *lex talionis* as to a verdict which could legally be based only upon clearly understood options, and only the evidence in the case. We believe the reading of *Eberhart* was highly improper, and may have affected the delicate constitutional balance required by the Supreme Court. Therefore a new sentencing hearing is required.

### Conclusion

For the reasons set forth hereinabove, the sentence in Case No. C80–1078A—Cobb County—is vacated, and the case remanded to Cobb County Superior Court for new trial as to all issues, guilt/innocence and penalty, within 180 days of the date of this order, failing which petitioner shall stand acquitted.

With respect to the Forsyth County case, Civil Action No. C80–50G, in the Gainesville Division of this Court, the sentence of death is vacated, and the matter remanded to Forsyth County Superior Court for re-sentencing consistent with the findings and conclusions of this Court, within 120 days, failing which petitioner shall stand sentenced to life imprisonment on the Forsyth County charge.